UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

SELIM ZHERKA, and THE GUARDIAN NEWS, INC.,

                Plaintiffs,

   -against-

RUSSELL MARTINEZ, individually, STEPHEN
FORCE, individually, and EDWARD FALCONE,
individually,

                Defendants.

-----------------------------------------------------------------

07 Civ. 8047 (CLB)

# MEMORANDUM OF LAW
# IN SUPPORT OF PROPOSED INTERVENOR-DEFENDANT'S
# MOTION FOR A PRELIMINARY INJUNCTION

KEANE & BEANE, P.C.
Attorneys for Intervenor-Defendant
445 HAMILTON AVENUE, 15TH FLOOR
WHITE PLAINS, NEW YORK 10601
(914) 946-4777

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ....................................................................................1

II. ARGUMENT..................................................................................................................4

    POINT I
    THE LIBRARY'S MOTION FOR LEAVE TO
    INTERVENE SHOULD BE GRANTED ........................................................................4

    POINT II
    THE LIBRARY'S MOTION FOR A PRELIMINARY
    INJUNCTION SHOULD BE GRANTED ......................................................................5

    A.    Preliminary Injunction Standard..........................................................................5

    B.    The Library Is Likely To Succeed
         On The Merits Of Its Claims ...............................................................................6

    C.    The Library Will Suffer Irreparable Harm
         In The Absence Of Preliminary Injunctive Relief............................................11

    D.    The Balance Of Hardships Tips
         Decidedly In The Library's Favor .....................................................................14

III. CONCLUSION .............................................................................................................14

# TABLE OF AUTHORITIES

Arkansas Educational Television Commission v. Forbes,
    523 U.S. 666, 118 S.Ct. 1633 (1998) ..................................................................................6

Bronx Household of Faith v. Board of Education of City of New York,
    492 F.3d 89 (2d Cir. 2007) ...........................................................................................8, 10

Butler Fitzgerald & Potter v. Sequoa Corp.,
    250 F.3d 171 (2d Cir. 2001) ................................................................................................4

Chicago Observer, Inc. v. City of Chicago,
    929 F.2d 325 (7th Cir. 1991) .............................................................................................11

Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,
    473 U.S. 788, 105 S.Ct. 3439 (1985) .............................................................................7, 12

Cuesnongle v. Ramos,
    713 F.2d 881 (1st Cir. 1983)..............................................................................................13

Davenport v. Washington Educ. Association,
    ___ U.S. ___, 127 S.Ct. 2372 (2007) ................................................................................10

Doyle v. Clark County Public Library,
    2007 WL 2407051 (S.D. Ohio 2007) ..................................................................................8

Elrod v. Burns,
    427 U.S. 347, 96 S.Ct. 2673 (1976) ..................................................................................13

Faith Center Church Evangelistic Ministries v. Glover,
    480 F.3d 891 (9th Cir. 2006) ...............................................................................................8

Families Achieving Independence and Respect v. Nebraska Dept. of
    Social Services, 111 F.3d 1408 (8th Cir. 1997).....................................................................8

Gay Guardian Newspaper v. Ohoopee Regional Library System,
    235 F.Supp.2d 1362 (S.D.Ga. 2002) ...............................................................................9, 10

Good News Club v. Milford Central School,
    533 U.S. 98, 121 S.Ct. 2093 (2001) ....................................................................................7

Greer v. Spock,
    424 U.S. 828, 96 S.Ct. 1211 (1976) ....................................................................................3

H.L. Hayden Co. v. Siemens Medical Systems, Inc.,
    797 F.2d 85 (2d Cir. 1986) ..................................................................................................4

Hill v. Derrick,
  2006 WL 1620226 (M.D. Pa. 2006)..................................................................................8

Honolulu Weekly, Inc. v. Harris,
  298 F.3d 1037 (9th Cir. 2002)........................................................................................11

Hotel Employees & Rest. Employees Union Local 100 of N.Y. v.
  City of New York Department of Parks and Recreation,
  311 F.3d 534 (2d Cir. 2002) ............................................................................................7

Huminski v. Corsones,
  386 F.3d 116 (2d Cir. 2004) ........................................................................................7, 8

Husain v. Springer,
  494 F.3d 108 (2d Cir. 2007) ............................................................................................7

International Society for Krishna Consciousness, Inc. v. Lee,
  505 U.S. 672, 112 S.Ct. 2701 (1992) ............................................................................6, 8

Kamerling v. Massanari,
  295 F.3d 206 (2d 2002) .................................................................................................11

Kreimer v. Bureau of Police for Town of Morristown,
  958 F.2d 1242 (3d Cir. 1992) ..........................................................................................8

Long Island Gynecological Services, P.C. v. Murphy,
  298 A.D.2d 504, 748 N.Y.S.2d 776 (2d Dep't 2002).....................................................13

Lusk v. Village of Cold Spring,
  475 F.3d 480 (2d Cir. 2007) ..........................................................................................13

Make The Road by Walking, Inc. v. Turner,
  378 F.3d 133 (2d Cir. 2004) ............................................................................................7

N.Y. Magazine v. Metropolitan Transportation Authority,
  136 F.3d 123 (2d Cir.1998) .............................................................................................7

Neinast v. Board of Trustees of Columbus Metropolitan Library,
  346 F.3d 585 (6th Cir. 2003) ...........................................................................................8

New York ex rel. Spitzer v. Operation Rescue National,
  273 F.3d 184 (2d Cir. 2001) ..........................................................................................13

New York News, Inc. v. Kheel,
  972 F.2d 482 (2d Cir. 1992) .......................................................................................4, 5

New York State National Organization for Women v. Terry,
  886 F.2d 1339 (2d Cir.1989) .........................................................................................13

Peck v. Baldwinsville Central School District,
   426 F.3d 617 (2d Cir. 2005) ..........................................................................................6, 7

Perry Education Association v. Perry Local Educator's Association,
   460 U.S. 37, 103 S.Ct. 948 (1983) ......................................................................................6

Preminger v. Principi,
   422 F.3d 815 (9th Cir. 2005) ...............................................................................................8

Random House, Inc. v. Rosetta Books LLC,
   283 F.3d 490 (2d Cir. 2002) ................................................................................................6

Regents of the University of California v. Bakke,
   438 U.S. 265, 98 S.Ct. 2733 (1978) ..................................................................................12

Sefick v. Gardner,
   164 F.3d 370 (7th Cir.1998) ................................................................................................8

Sund v. City of Wichita Falls, Texas,
   121 F.Supp.2d 530 (N.D. Tex. 2000) ..................................................................................8

Tachiona ex rel. Tachiona v. Mugabe,
   186 F.Supp.2d 383 (S.D.N.Y. 2002) ...................................................................................4

Tunick v. Safir,
   209 F.3d 67 (2d Cir. 2000) ................................................................................................13

United States v. American Library Association, Inc.,
   539 U.S. 194, 123 S.Ct. 2297 (2003) ..........................................................................11, 12

United States v. Grace,
   461 U.S. 171, 103 S.Ct. 1702 (1983) ............................................................................6, 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

SELIM ZHERKA, and THE GUARDIAN NEWS, INC.,

                Plaintiffs,                              07 Civ. 8047 (CLB)

    -against-

RUSSELL MARTINEZ, individually, STEPHEN
FORCE, individually, and EDWARD FALCONE,
individually,

                Defendants.
-----------------------------------------------------------------x

## MEMORANDUM OF LAW
## IN SUPPORT OF PROPOSED INTERVENOR-DEFENDANT'S
## MOTION FOR A PRELIMINARY INJUNCTION

**I.**    **Preliminary Statement**

Intervenor-Defendant, the Yonkers Public Library (the "Library"), submits this Memorandum of Law in support of its motion for an Order: (i) granting the Library leave to intervene in this action as a defendant, pursuant to Fed. R. Civ. P. 24; and (ii) issuing a preliminary injunction, pursuant to Fed. R. Civ. P. 65, directing Plaintiffs Selim Zherka and The Guardian News, Inc. ("Plaintiffs") to forthwith remove the metallic newspaper receptacles for The Westchester Guardian (the "Guardian Boxes") that were placed inside the Yonkers Riverfront Library, located at 1 Larkin Center, Yonkers, New York 10701 (the "Riverfront Library"), and the Yonkers Grinton I. Will Library, located at 1500 Central Park Avenue, Yonkers, New York 10710 (the "Will Library").

As explained in the accompanying Declaration of Defendant Stephen E. Force, Director of the Yonkers Public Library, the Riverfront and Will Libraries have longstanding policies of making free newspapers, such as The Westchester Guardian, available to the public. Such

newspapers and similar periodicals are dispensed in the same manner, and from prescribed locations, within the Riverfront and Will Libraries. As a matter of policy and practice, the Riverfront and Will Libraries do not and have never permitted publishers to place newspaper vending machines within their facilities.

After having been made aware of this policy, Plaintiffs chose to flout it by placing Guardian Boxes inside the atrium of the Riverfront Library, and inside a vestibule and hallway (2 boxes) of the Will Library. When the Library has tried to remove the boxes (after notifying Plaintiffs of its intention to do so), Plaintiffs replaced the boxes with new ones. (See Martinez and Deutschen Declarations). Simply put, this has led to a stalemate between Plaintiffs and the Library over the control of these public spaces within the Riverfront and Will Libraries.

The Library seeks leave to intervene, and preliminary injunctive relief, in the hope of reaching a swift resolution of this central legal issue.

The Library's motion to intervene should be granted because it clearly has a direct, substantial and protectable interest in this dispute. For the following reasons, the Library further submits that it is entitled to preliminary injunctive relief.

The Library does not view the presence of the Guardian Boxes inside the Riverfront and Will Libraries as a trivial matter. A core tenet of any library institution is equity of access. A library should strive to provide materials and information to the public without regard to partisan or political considerations. The Library's content-neutral policy and practice with respect to providing free newspapers to the public helps ensure that its distribution of these materials will not be viewed as endorsing or favoring any particular publisher or viewpoint. Plaintiffs' actions have frustrated this objective. Indeed, Plaintiffs' placement of Guardian Boxes in conspicuous locations inside the Riverfront and Will Libraries creates the appearance that The Westchester

Guardian is being afforded a special privilege or status. This is antithetical to the Library's institutional values and beliefs.

Plaintiffs, on the other hand, do not have the unfettered right to place Guardian Boxes inside public buildings, such as the Riverfront and Will Libraries. "The guarantees of the First Amendment have never meant that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please." Greer v. Spock, 424 U.S. 828, 836, 96 S.Ct. 1211, 1216-17 (1976). The Supreme Court has recognized that public entities have the right to administer and control the real property under their use. A library, such as the Yonkers Public Library, also has the right to implement reasonable, content-neutral regulations governing the use of its facilities, and it has broad discretion in determining how to provide information to its patrons. These are important interests that the Library also seeks to protect through the issuance of preliminary injunctive relief.

The Library does not object to Plaintiffs' distribution of copies of The Westchester Guardian inside their branches. In fact, the Library has offered to facilitate Plaintiffs' distribution of copies of their newspaper inside their branches, and it remains willing to do so. (See Force Decl., Exhibit B). The Library simply objects to the manner in which Plaintiffs have insisted upon distributing their newspaper — by placing Guardian Boxes inside its facilities. The Library does not seek to have Plaintiffs enjoined or otherwise restrained from delivering a reasonable number of copies of The Westchester Guardian to the Riverfront and Will Libraries for distribution by those libraries in substantially the same manner as those libraries distribute other free newspapers and periodicals to the public. Plaintiffs, therefore, will not suffer any prejudice by the issuance of preliminary injunctive relief.

Accordingly, the Library submits that its motion for leave to intervene, and for a preliminary injunction, should be granted in all respects.

II.  **Argument**

### POINT I

### THE LIBRARY'S MOTION FOR LEAVE TO INTERVENE SHOULD BE GRANTED

"In order to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2), an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." New York News, Inc. v. Kheel, 972 F.2d 482, 485 (2d Cir. 1992); Butler Fitzgerald & Potter v. Sequoa Corp., 250 F.3d 171, 176 (2d Cir. 2001).

Permissive intervention may be granted "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2). Substantially the same factors must be considered by the court in determining whether to grant permissive intervention as must be considered under a Rule 24(a)(2) application to intervene as a matter of right. See H.L. Hayden Co. v. Siemens Medical Systems, Inc., 797 F.2d 85, 89 (2d Cir. 1986). "[T]he test is a flexible and discretionary one, and courts generally look at all four factors as a whole rather than focusing narrowly on any one of the criteria." Tachiona ex rel. Tachiona v. Mugabe, 186 F.Supp.2d 383, 394 (S.D.N.Y. 2002).

The Library should be permitted to intervene in this action under either of these provisions. The Library's application is timely since it is seeking intervention at the outset of

this litigation, at the same time issue is being joined by the other Defendants. The Library also has a "direct, substantial and legally protectable" interest in the regulation and use of its own facilities. See generally New York News, Inc. v. Kheel, 972 F.2d. 482, 486 (2d Cir. 1992). "Interests in property are the most elementary type of right that Rule 24(a) is designed to protect." 7C Charles Alan Wright, Federal Practice & Procedure § 1908 (2d ed.1986). This interest is directly implicated by the right of access and use asserted by Plaintiffs in their Complaint, and by the injunctive relief they seek, i.e., "[p]ermanently enjoining Defendants from interfering with the distribution and/or dissemination of the Guardian within the City Library." (Compl., ¶ 20) (emphasis added). Finally, given that the existing defendants appear to be named in their individual capacities only,[1] they cannot be expected to advance the same property and institutional interests asserted by the Library.

## POINT II

### THE LIBRARY'S MOTION FOR A PRELIMINARY INJUNCTION SHOULD BE GRANTED

**A.  Preliminary Injunction Standard**

"A party seeking a preliminary injunction in this Circuit must show: (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." Random House, Inc. v. Rosetta

---

[1] This is not entirely clear. Although the caption of the Complaint names each defendant "individually," Paragraph 6 of the Complaint identifies Defendant Edward Falcone as being sued "in his individual and official capacities only." (Compl., ¶ 6) (emphasis added).

-5-

Books LLC, 283 F.3d 490, 491 (2d Cir. 2002). As demonstrated below, the Library has established these elements and therefore is entitled to preliminary injunctive relief.

**B. The Library Is Likely To Succeed On The Merits Of Its Claims**

It is well-established that the level of judicial scrutiny that must be applied to government restrictions upon speech varies with the nature of the forum in which the speech occurs. See Arkansas Educational Television Commission v. Forbes, 523 U.S. 666, 677, 118 S.Ct. 1633, 1641 (1998); International Society for Krishna Consciousness, Inc. v. Lee, 505 U.S. 672, 677-78, 112 S.Ct. 2701, 2705 (1992); Peck v. Baldwinsville Central School District, 426 F.3d 617, 625-26 (2d Cir. 2005). The Supreme Court has identified three (3) different types of speech forums for purposes of First Amendment analysis.

*Traditional Public Forum*: Public places that historically have been associated with free assembly and debate, such as streets, sidewalks and parks, are generally considered to be "traditional public forums." See United States v. Grace, 461 U.S. 171, 177, 103 S.Ct. 1702, 1707 (1983). In a traditional public forum, "the government may enforce reasonable time, place, and manner regulations as long as the restrictions are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." Perry Education Association v. Perry Local Educator's Association, 460 U.S. 37, 45, 103 S.Ct. 948, 955 (1983).

*Designated Public Forum*: A "designated public forum" is a place not traditionally open to assembly and debate, but which the government, nevertheless, intentionally opens for expressive activity. See Perry, 460 U.S. at 46, 103 S.Ct. 948. Restrictions upon speech in a

designated public forum are generally subject to the same judicial scrutiny as traditional public forums. See Make The Road by Walking, Inc. v. Turner, 378 F.3d 133, 142-43 (2d Cir. 2004).

The Second Circuit has identified a "subset" of the designated public forum, namely, the "limited public forum," in which the foregoing strict scrutiny standard does not apply. See Make The Road by Walking, Inc., 378 F.3d at 143. A limited public forum arises "where the government opens a non-public forum but limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects." Hotel Employees & Rest. Employees Union Local 100 of N.Y. v. City of New York Department of Parks and Recreation, 311 F.3d 534, 545 (2d Cir. 2002). See also N.Y. Magazine v. Metropolitan Transportation Authority, 136 F.3d 123, 128 & n. 2 (2d Cir.1998) (describing a limited public forum as a "sub-category of the designated public forum). "Restrictions on speech not within the type of expression allowed in a limited public forum must only be reasonable and viewpoint neutral." Make The Road by Walking, Inc., 378 F.3d at 143.

*Nonpublic Forum*: A "nonpublic forum" is government property that is not classified a traditional public forum or designated public forum. Like the limited public forum, restrictions upon speech in a nonpublic forum need only be reasonable and viewpoint neutral. See Good News Club v. Milford Central School, 533 U.S. 98, 106-07, 121 S.Ct. 2093, 2100 (2001); Husain v. Springer, 494 F.3d 108, 121-22 (2d Cir. 2007); Bronx Household of Faith, 492 F.3d at 97; Peck, 426 F.3d at 626. Such restrictions "need not be the most reasonable or the only reasonable limitation." Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 808, 105 S.Ct. 3439, 3452 (1985). To the contrary, the restrictions "need only be reasonable in light of the purpose of the forum and reflect a legitimate government concern." Huminski v. Corsones, 386 F.3d 116, 155 (2d Cir. 2004). See also International Society for Krishna Consciousness, 505

U.S. at 688, 112 S.Ct. at 2712 ("[A] restriction on speech in a nonpublic forum is "reasonable" when it is "consistent with the government's legitimate interest in preserving the property ... for the use to which it is lawfully dedicated"") (quotation marks and citation omitted).

Numerous courts have held that interior spaces within a public library, such as the Yonkers Public Library, are appropriately deemed "limited public forums" for purposes of constitutional analysis. See Faith Center Church Evangelistic Ministries v. Glover, 480 F.3d 891, 908 (9th Cir. 2006), cert. denied, ___ U.S. ___, 2007 WL 1668585 (2007); Neinast v. Board of Trustees of Columbus Metropolitan Library, 346 F.3d 585, 591 (6th Cir. 2003); Kreimer v. Bureau of Police for Town of Morristown, 958 F.2d 1242, 1261 (3d Cir. 1992); Doyle v. Clark County Public Library, 2007 WL 2407051, at *4 (S.D. Ohio 2007); Hill v. Derrick, 2006 WL 1620226, at *6 (M.D. Pa. 2006); Sund v. City of Wichita Falls, Texas, 121 F.Supp.2d 530, 548 (N.D. Tex. 2000); accord Bronx Household of Faith v. Board of Education of City of New York, 492 F.3d 89, 96 (2d Cir. 2007).

Courts also have held that the lobbies of public buildings are nonpublic forums. See Preminger v. Principi, 422 F.3d 815 (9th Cir. 2005) (lobby of building operated by Department of Veterans' Affairs was nonpublic forum); Huminski v. Corsones, 386 F.3d 116 (2d Cir. 2004) (lobby of courthouse was a nonpublic forum); Sefick v. Gardner, 164 F.3d 370, 372 (7th Cir.1998) (lobby of the Dirksen Building is a nonpublic forum); Families Achieving Independence and Respect v. Nebraska Dept. of Social Services, 111 F.3d 1408 (8th Cir. 1997) (lobby of state welfare office was nonpublic forum).

The instant matter involves the atrium of the Riverfront Library, and a vestibule and hallway in the Will Library. The Riverfront Library is located within a building that is also occupied by the City of Yonkers Board of Education. (Force Decl., ¶ 11).

Gay Guardian Newspaper v. Ohoopee Regional Library System, 235 F.Supp.2d 1362 (S.D.Ga. 2002), appears to be the only reported decision to undertake a detailed, First Amendment forum analysis with respect to the lobby area of a public library. In that case, the District Court concluded that a library's lobby "may be considered a hybrid -- a cross between a limited and a nonpublic forum." Gay Guardian Newspaper, 235 F.Supp.2d at 1370. The court explained, in relevant part:

> [A] public building's front lobby is typically considered a non public forum, which means that government officials who operate those buildings have a much freer reign, for example, in selecting what sort of "invited" public art can go in them . . .
>
> . . .
>
> Still, some of the distinctions applied in this sphere are elusive, and that can naturally cause uncertainty among library officials charged with harmoniously operating a community library. Such librarians are entitled to be concerned with the fact that the library's lobby is the first thing the community sees.
>
> In arranging the tone and texture of a library's lobby, then, it would not be outlandish for librarians to be influenced by the same concerns flowing through nonpublic forum cases which . . . sanction the use of "controversy-avoidance" measures.
>
> In responding to the local community's reaction to its lobby, a library might, just as government building operators can do, rationally distinguish between its interior meeting rooms and its front lobby, which is the building's "first greeting" to the public . . .
>
> A library might want to treat its front lobby different from other areas for the simple reason that most patrons enter through the lobby and thus are a captive audience. The captive-audience factor figures into non-public forum cases . . . .
>
> So even when a library decides to facilitate free expression in its front lobby (thus making it a limited public forum), it nevertheless does so within an area that also arguably remains a nonpublic forum to the extent that it serves to greet a captive-audience public and engender the quiet atmosphere that the library would like to present. It is in that sense that the Library's lobby may be

> considered a hybrid -- a cross between a limited and a nonpublic forum.

Gay Guardian Newspaper, 235 F.Supp.2d at 1369-70 (citations and footnote omitted).

Whether the atrium of the Riverfront Library and the vestibule of the Will Library (and its interior hallways) are deemed to be "limited public forums" or "nonpublic forums," the controlling legal standard is the same. The Library may impose restrictions on speech within these spaces, so long as the restrictions are viewpoint neutral and reasonable in light of the purpose that the government property is intended to serve. See Davenport v. Washington Educ. Association, ___ U.S. ___, 127 S.Ct. 2372, 2381 (2007). ("[I]t is . . . black-letter law that, when the government permits speech on government property that is a nonpublic forum, it can exclude speakers on the basis of their subject matter, so long as the distinctions drawn are viewpoint neutral and reasonable in light of the purpose served by the forum"); Grace, 461 U.S. at 178, 103 S.Ct. at 1707 ("The government, no less than a private owner of property, has the power to preserve the property under its control for the use to which it is lawfully dedicated.") (internal quotation omitted); Greer, 424 U.S. at 836, 96 S.Ct. at 1216-17 ("The guarantees of the First Amendment have never meant that people who want to propagandize protests or views have a constitutional right to do so whenever and however and wherever they please"); Bronx Household of Faith, 492 F.3d at 97 (in a limited public forum "entire class of speakers or subjects may be excluded according to reasonable, viewpoint-neutral rules governing the content of speech allowed") (internal quotation omitted).

Applying these principles here, the Library's policy of facilitating the distribution of free newspapers at a designated location within its facilities — but disallowing the use of large, metallic vending machines that are typically placed outdoors — is viewpoint neutral and entirely

reasonable. "To fulfill their traditional missions, public libraries must have broad discretion to decide what material to provide to their patrons." United States v. American Library Association, Inc., 539 U.S. 194, 204, 123 S.Ct. 2297, 2304 (2003). Public libraries must likewise be afforded broad discretion to determine how they will dispense materials to the public and utilize the physical space within their own facilities. The Library's policy of distributing free newspapers without the use of vending machines easily passes a rational basis standard of review, as its policy is aimed at promoting the most efficient use of its space. See Honolulu Weekly, Inc. v. Harris, 298 F.3d 1037 (9th Cir. 2002) (ordinance that required newspaper publishers would sought to distribute their publications along sidewalks in special district to use one of two sets of news racks, rather than steel vending boxes, did not violate the First Amendment or Equal Protection Clause); Chicago Observer, Inc. v. City of Chicago, 929 F.2d 325 (7th Cir. 1991) (ordinance regulating the size of and advertisements on news racks upheld as constitutional).

Moreover, the Library has determined that its policy of distributing free newspapers in a uniform manner is necessary to ensure its appearance of neutrality as an institution. As discussed below, this is a critical and entirely reasonable purpose underlying its policy. See infra, Point II(C).

### C. The Library Will Suffer Irreparable Harm In The Absence Of Preliminary Injunctive Relief

Irreparable harm is established by showing that "there is a continuing harm which cannot be adequately redressed by final relief on the merits" and for which "money damages cannot provide adequate compensation." Kamerling v. Massanari, 295 F.3d 206, 214 (2d 2002)

(internal quotation marks and citation omitted). The Library submits it has established a risk of irreparable harm.

The Library's interest in maintaining the appearance of neutrality with respect to its collection and distribution of materials to the public is a paramount institutional concern, the loss of which cannot be compensated through monetary damages. The Supreme Court and other courts have recognized the importance of such considerations in the context of First Amendment jurisprudence. See, e.g., Cornelius, 473 U.S. at 789, 105 S.Ct. at 3442 (1985) ("[A]voiding the appearance of political favoritism is a valid justification for limiting speech in a non-public forum"); Preminger, 422 F.3d at 825 ("In a nonpublic forum, the government may restrict expressive activity so as to avoid the perception that it favors one political group over another").

The Library's interest in this regard is closely analogous to the right of "academic freedom" afforded to schools and other educational institutions. The Supreme Court has observed that "[o]ur Nation is deeply committed to safeguarding academic freedom, which is of transcendental value to all of us." Keyishian v. Board of Regents of University of State of New York, 385 U.S. 589, 603, 87 S.Ct. 675, 684 (1967). "Academic freedom, though not a specifically enumerated constitutional right, long has been viewed as a special concern of the First Amendment." Regents of the University of California v. Bakke, 438 U.S. 265, 312, 98 S.Ct. 2733, 2760 (1978). See also Cuesnongle v. Ramos, 713 F.2d 881, 884 (1st Cir. 1983) (right to academic freedom "establish[es] a zone of First Amendment protection for the educational process itself, which, in proper circumstances, must include not only students and teachers, but their host institutions as well"). Cf. American Library Association, Inc., 539 U.S. at 226, 123 S.Ct. at 2316 (Stevens, J., dissenting) ("Given our Nation's deep commitment to safeguarding academic freedom and to the robust exchange of ideas, a library's exercise of

judgment with respect to its collection is entitled to First Amendment protection") (internal quotation marks and citation omitted).

To the extent that the Library's interest in regulating its dissemination of free newspapers to its patrons implicates a First Amendment right to speech and/or academic freedom, the Plaintiffs' infringement of this right would necessarily constitute an irreparable injury. See Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689 (1976) ("The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury"); Lusk v. Village of Cold Spring, 475 F.3d 480, 492 (2d Cir. 2007); Tunick v. Safir, 209 F.3d 67 (2d Cir. 2000) ("[V]iolations of the First Amendment rights are presumed irreparable").

The Library submits, however, that the Court need not find its interest to be of constitutional dimensions in order to conclude that the Library has indeed established a risk of irreparable harm. The Library's loss of control over the use of its facilities, and its ability to maintain a nonpartisan posture with respect to its distribution of free newspapers, are sufficient to establish irreparable harm.

The Library has also established a risk of irreparable harm by reason of Plaintiffs' intentional and continuing trespass. The Second Circuit has held that "[t]he threat of continuing trespass entitles a property owner to injunctive relief where irreparable injury may result." New York ex rel. Spitzer v. Operation Rescue National, 273 F.3d 184, 201 (2d Cir. 2001) (quoting New York State National Organization for Women v. Terry, 886 F.2d 1339, 1361 (2d Cir.1989)). See also Long Island Gynecological Services, P.C. v. Murphy, 298 A.D.2d 504, 748 N.Y.S.2d 776, 777 (2d Dep't 2002) ("The threat of continuing trespass entitles a property owner to injunctive relief where irreparable injury may result").

D. **The Balance Of Hardships Tips Decidedly In The Library's Favor**

In the instant matter, the balance of hardships and the public interest tips decidedly in favor of granting the Library's application for preliminary injunctive relief. Plaintiffs will suffer no harm as a consequence of the imposition of any preliminary injunctive relief because the Library has made it clear that it will facilitate the Plaintiffs' distribution of The Westchester Guardian within the Riverfront and Will Libraries -- without the use of the Guardian Boxes. (Force Decl., ¶¶ 15-16). This Court should also note that Plaintiffs have placed at least four other Guardian Boxes on public sidewalks in close proximity to the Riverfront Library. (Id., ¶ 22). Under these circumstances, there is no risk that Plaintiffs' constitutionally protected speech will be chilled.

III. **Conclusion**

The Library respectfully requests that the Court issue an Order entering the preliminary injunctive relief requested herein, and granting it such other and further relief as may be just and proper.

Dated:  White Plains, New York
        November 2, 2007

                                            KEANE & BEANE, P.C.

                        By: *[signature]*
                            Edward J. Phillips (EP-4825)
                            Attorneys for Intervenor-Defendant
                            445 Hamilton Avenue, Suite 1500
                            White Plains, New York 10601
                            (914) 946-4777