UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x

SELIM ZHERKA, and THE GUARDIAN NEWS, INC.,

                                Plaintiffs,               07 Civ. 8047 (CLB )

        -against-

RUSSELL MARTINEZ, individually, STEPHEN
FORCE, individually, and EDWARD FALCONE,
individually

                                Defendants.

------------------------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF CROSS-MOTION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

### Preliminary Statement

In early September 2007 this action was filed and served seeking injunctive, declarative and monetary relief against the individually named Defendants for violations of Plaintiffs' First Amendment protected rights of free speech and freedom of the press. Motivated at least in part by reason of that filing the Yonkers Library Board of Trustees for the first time adopted on September 18, 2007, a written library "Policy on Delivering Free Newspapers and Magazines".

Thereafter the Yonkers Public Library moved to intervene in this action and, as against a newspaper publisher requests that the Court issue an injunction impairing or crippling Plaintiffs' rights as guaranteed by the First Amendment to the United States

Constitution. Plaintiffs have no objection to the intervention by the Library. However, for reasons set forth *infra* we submit that the newly adopted Policy is, both as applied and on its face, patently violative of the First Amendment and itself must be the subject of permanent injunctive relief.

In that connection Plaintiffs have cross-moved and request that this case, for purposes of equitable relief only, be set down for a bench trial in January 2008.

## POINT

### A PRELIMINARY AND/OR PERMANENT INJUNCTION SHOULD BE GRANTED IN FAVOR OF THE PLAINTIFFS

Well-settled law in this jurisdiction dictates that in "most cases, a party seeking a preliminary injunction must demonstrate (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case that make them fair ground for litigation, and a balance of hardships tipping decidedly in its favor". Forest City Daily Housing, Inc. v. Town of North Hempstead, 175 F.3d 144, 149 (2d Cir. 1999).

Prohibitory preliminary injunctions, such as that sought in the case at bar, "are permitted 'only when the moving party has demonstrated that (1) absent injunctive relief, he will suffer "irreparable injury", and (2) there is a "likelihood that he will succeed on the merits of his claim." Field Day, LLC v. County of Suffolk, 463 F.3d 167, 181 (2d Cir. 2006).

As to the first element, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury". Elrod v. Burns, 427 U.S. 347, 373 (1976); Lusk v. Village of Cold Spring, 475 F.3d 480, 492 (2d Cir. 2007). And since at-issue Policy of the Library constitutes a clearly unlawful prior restraint without benefit of any time, place and/or manner limitations there is an extremely high likelihood that Plaintiffs will success on the merits of their claims. Lusk, *supra* at 485, ("The Supreme Court has referred to '[p]rior restraints on speech and publication [as] the most serious and least tolerable infringement on First Amendment rights").

As to the Policy, no particular degree of insight is required to appreciate that its draftsperson lacked even minimal familiarity with the parameters of the First Amendment. Consideration of various portions of the Policy confirm this conclusion.

As a threshold matter, the first bulleted text of the Policy which provides:

> "Any person or company wishing to have the Library distribute
> its newspaper/magazines at any Library branch must provide
> the Library Director with seven (7) days notice in advance of the
> first day the person/company wishes to begin free distribution,
> together with a recent sample of the publication",

manifestly not only conditions exercise of First Amendment right and impermissibly delays for an arbitrary period of time the right to exercise those rights, but by requiring for the Director's review a "recent sample of the publication" apparently imposes an impermissible content related review standard. Lusk v. Village of Cold Spring, 475 F.3d 480, 485 (2d Cir. 2007)("A law requiring prior administrative approval of speech falls

within the prior restraint rubric" and "prior restraints on speech and publication [are] the most serious and the least tolerable infringement on First Amendment rights"); <u>Field Day, LLC v. County of Suffolk</u>, 463 F.3d 167, 174 (2d Cir. 2006)("A statute may unconstitutionally restrict speech in one of two primary ways. First a statute may restrict speech based on the content of that speech. Such content-based restrictions are almost always unconstitutional); <u>Hobbs v. County of Westchester</u>, 397 F.3d 133, 148 (2d Cir. 2005); <u>National Council of Arab Americans and Act Now to Stop War & End Racism Coalition v. City of New York</u>, 2007 WL 655602, *5 (S.D.N.Y. 2007)("A prior restraint, i.e., 'any regulation that gives public official the power to deny use of a forum in advance of actual expression. . .is not unconstitutional per se, but it bears a heavy presumption against its constitutional validity").

The second bulleted text of the Policy is equally if not more offensive to the First Amendment. In pertinent respect it provides:

> "The publications must. . .have content that is relevant to city or
> county residents, as determined by the Library Director. . .Publications
> with little or no editorial content. . .will not be accepted."

Empowering the Director with the "unbridled" discretion to determine subjectively what is or is not "relevant" - - not only to city residents but Westchester County residents - - is clearly constitutionally offensive. Indeed the complete absence of any objective criteria required to be used by the Director in making relevancy determinations cannot withstand constitutional scrutiny. <u>Id</u>. at 6 ("To withstand constitutional scrutiny, [time, place, and manner'] restrictions must be (1) content neutral, in that they target some quality other than substantive expression; (2) narrowly tailored to serve a significant governmental

4

interest; and (3) permit alternative channels for expression. Additionally, time, place and manner restrictions of speech in public fora are unconstitutional if they confer overly broad discretion on regulating officials"); Lusk, *supra* at 486 ("[A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional"); Deegan v. City of Ithaca, 444 F.3d 135, 142 (2d Cir. 1999); Abel v. Town of Orangetown, 759 F. Supp. 161, 164-5 (1991)(Goettel, J.)

For the same reason the unfettered power of the Director to bar publications that he subjectively believes to contain "little or no editorial content" is equally offensive. By what criteria is something to be or not to be considered "editorial" by the Director? And what is "little. . .editorial content" - - as may be determined on a content-based, *ad hoc* review of any given publication.

Indeed, why must there be any editorial content in a free publication to entitle its publisher to distribution in the Library? City of Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 769-70 (1988)(It is apparent that the face of the ordinance itself contains no express limits on the mayor's discretion. . .To allow these illusory 'constraints' to constitute the standards necessary to bound a licensor's discretion renders the guarantee against censorship little more than a high-sounding ideal").

The fourth bulleted provision of the Policy, clearly adopted to retaliate against the Plaintiffs, provides in relevant respect:

> ". . .Under no circumstances will the Library permit. . .newspaper
>
> boxes, inside any branch of the Library."

Since that absolute prohibition was obviously conjured up because of the filing of the instant law suit, it is First Amendment retaliatory and prohibited for that reason alone.

The fifth bulleted provision of the Policy, which provides in relevant part:

""The Library will accept reasonable quantities of newspapers. . .",

is also constitutionally infirm because "reasonable" is a purely subjective term to be defined by the Library Director on an *ad hoc* basis without any objective standards whatsoever. Thomas v. Chicago Park District, 534 U.S. 316, 323 (2202).

The sixth bulleted provision of the Policy, which provides in relevant part:

"Any publication may be refused if the Library Director determines

that the Library, or any branch thereof, no longer has space for

additional titles",

also vests the Director with unfettered, subjective discretionary power to bar a publication without any objective standards. *See* Forsyth County v. Nationalist Movement, 505 U.S. 123, 130 (1992); Transportation Alternatives, Inc. v. City of New York, 340 F.3d 72, 77 (2d cir. 2003).

The seventh bulleted provision of the Policy states:

"Any publication that displays blatantly offensive language or

images, in the judgment of the Library Director of Deputy

Director, or advocates discrimination based on religion, race,

gender, ethnicity or sexual orientation will be denied distribution."

A more constitutionally offensive and subjective standard, predicated upon the Director or Deputy Director's freedom to impose their own moral standards upon First Amendment protected publications, could not easily be fashioned. There are no objective

criteria for determining what is offensive or what is "blatantly" offensive. Field Day, *supra* at 178 ("The [Supreme] Court explained that 'a municipality may not empower its licensing officials to roam essentially at will, dispensing or withholding permission to speak. . .according to their own opinions regarding the potential effect of the activity in question on the 'welfare,', 'decency,' or 'morals' of the community. . .Listeners' reaction to speech is not a content-neutral basis for regulation"); McDonald v. Safir, 206 F.3d 183, 192 (2d Cir. 2000) Deegan, at 142.

There are no objective criteria for determining when "language" and/or "images" move from the Director and/or his Deputy's subjectively divined level of "offensive" to the completely banned level of "blatantly offensive". Moreover, precisely how does the Director or Deputy Director determine whether a publication "advocates discrimination" based on any of the five enumerated grounds? Whimsy and/or subjective *ad hoc* decision making, as contemplated by this provision cannot withstand constitutional scrutiny. It is clearly and illegally content based.

The eighth bulleted provision, which provides in pertinent respect:

> "any person, company, or group wishing to have their publication
> displayed must receive approval from the Library Director and
> acknowledge that they have read and agree to comply with the
> terms of this Policy. The attached Acknowledgment must be
> completed, signed, dated and returned to the Library Director
> before any publication will be displayed and distributed at any
> of the Library's branches",

also cannot stand constitutional muster.

Conditioning dissemination of First Amendment protected publications upon agreement to adhere to a patently unconstitutional Policy is itself an impermissible prior restraint offensive to the First Amendment.

The final bulleted provision of the Policy provides in pertinent respect:

> "Failure to comply with the terms of this policy shall result in the loss of the privilege of free distribution of a newspaper/magazines, on a temporary or permanent basis, at the discretion of the Library Director. . .".

The Policy's attempt to degrade First Amendment protected rights to the status of a mere "privilege" must fail. The United States Constitution, applicable even within the borders of Yonkers, New York, trumps over misguided subjective standards imposed by members of the Board of Trustees. In any event, by what objective criteria does the Director determine whether the forfeiture of First Amendment rights is "temporary" or "permanent". Since only the Director will make that determination on a subjective *ad hoc* basis, we submit that vesting in him that authority offends the First Amendment.

## Conclusion

A trial should be scheduled for January 2008 following which a preliminary and/or permanent injunction should issue prohibiting the Defendants and the Intervenor from interfering with Plaintiff's First Amendment protected rights; barring them from interfering with the distribution of the Guardian in Library branches, whether by newsrack or otherwise; along with declaratory relief holding that the Policy is

constitutionally defective on its face and a applied by reason of Defendant Intervenor's

First Amendment retaliatory animus.

Dated: White Plains, New York
        December 6, 2007

                                        LOVETT & GOULD, LLP
                                        Attorneys for Plaintiff
                                        By:_____
                                        Jonathan Lovett (4854)
                                        222 Bloomingdale Road
                                        White Plains, N.Y. 10605
                                        914-428-8401