UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------

SELIM ZHERKA, and THE GUARDIAN NEWS, INC.,

               Plaintiffs,

  -against-

RUSSELL MARTINEZ, individually, STEPHEN
FORCE, individually, and EDWARD FALCONE,
individually,

               Defendants.

07 Civ. 8047 (CLB)

------------------------------------------------------------------

# MEMORANDUM OF LAW
# IN OPPOSITION TO PLAINTIFFS'
# MOTION FOR A PRELIMINARY INJUNCTION

KEANE & BEANE, P.C.
Attorneys for Defendants and Intervenor-Defendant
445 HAMILTON AVENUE, 15TH FLOOR
WHITE PLAINS, NEW YORK 10601
(914) 946-4777

## TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ..................................................................................1

II. ARGUMENT..............................................................................................................3

    POINT I
    PLAINTIFFS LACK STANDING
    TO CHALLENGE THE POLICY...............................................................................4

    POINT II
    PLAINTIFFS CANNOT MEET THE REQUIREMENTS
    FOR ISSUANCE OF A PRELIMINARY INJUNCTION.............................................5

III. CONCLUSION .........................................................................................................12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

SELIM ZHERKA, and THE GUARDIAN NEWS, INC.,

                Plaintiffs,                        07 Civ. 8047 (CLB)

    -against-

RUSSELL MARTINEZ, individually, STEPHEN
FORCE, individually, and EDWARD FALCONE,
individually,

                Defendants.

------------------------------------------------------------------x

## MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFFS'
## MOTION FOR A PRELIMINARY INJUNCTION

**I.**      **Preliminary Statement**

Defendants Russell Martinez, Stephen Force and Edward Falcone, together with Intervenor-Defendant, the Yonkers Public Library (the "Library"), jointly submit this Memorandum of Law in opposition to the cross-motion of Plaintiffs Selim Zherka and The Guardian News, Inc. ("Plaintiffs"), seeking preliminary and/or permanent injunctive relief. Plaintiffs contend that an administrative policy adopted by the Library for determining whether to accept free newspapers and magazines for distribution is unconstitutional on its face.

As demonstrated below, Plaintiffs' cross-motion should be denied. As a threshold matter, Plaintiffs lack standing to challenge the policy in question because the Library has always distributed, and wishes to continue distributing, copies of The Westchester Guardian newspaper. The Library would distribute The Westchester Guardian in precisely the same manner that it distributes other free newspapers and magazines — without the use of bulky

vending-type machines that are typically used outdoors.[1] Thus, Plaintiffs cannot establish that they have suffered (or will suffer) some injury as a result of the Library's policy, as required by Article III. (U.S. Const. Art. 3, § 2, cl. 1).

Even if Plaintiffs could establish standing (and they cannot), their cross-motion is legally baseless and should be denied in any event. In presenting their arguments, Plaintiffs simply ignore the applicable case law. The instant matter does not involve a parade, outdoor concert, street performance or similar function, as did all of the cases cited by Plaintiffs. Such events involve "traditional public forums" in which the government has significantly less latitude in restricting free speech. These cases are irrelevant in the instant matter. Plaintiffs' entire analysis of the Library's policy is fundamentally flawed in this respect, and their brief is useless insofar as evaluating the pertinent issues.

As a matter of law, public libraries are appropriately regarded as "limited public forums" for purposes of constitutional analysis. Moreover, the Supreme Court explained in <u>United States v. American Library Association, Inc.</u>, 539 U.S. 194, 123 S.Ct. 2297 (2003), that public libraries are entitled to evaluate content, and exercise editorial judgment, in choosing the type of materials they will make available to the public within their facilities. When viewed under the correct legal framework, the Library's policy for evaluating free newspapers and periodicals easily passes constitutional muster. Accordingly, the Library submits that Plaintiffs' cross-motion should be denied.

---

[1] As explained in the accompanying Reply Memorandum of Law, Plaintiffs have not oppose the Library's motion seeking a preliminary injunction requiring the removal of the <u>Guardian</u> Boxes from the Riverfront and Will Libraries, and barring Plaintiffs from placing new boxes in those buildings. The only issue addressed in Plaintiffs' motion papers is the Library's policy for determining whether to accept a free newspaper or magazine for distribution. Thus, the Library submits that its motion for a preliminary injunction should be granted, as it has established the requisite elements for the grant of preliminary injunctive relief.

II.     **Argument**

### POINT I

### PLAINTIFFS LACK STANDING TO CHALLENGE THE POLICY

The question of standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." Warth v. Seldin, 422 U.S. 490, 498, 95 S.Ct. 2197, 2205 (1975). "To satisfy the 'case' or 'controversy' requirement of Article III, which is the 'irreducible constitutional minimum' of standing, a plaintiff must, generally speaking, demonstrate that he has suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." Bennett v. Spear, 520 U.S. 154, 162, 117 S.Ct. 1154, 1161 (1997) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136-37 (1992)).

In addition to these so-called "immutable" requirements of Article III, "the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing." Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 474-75, 102 S.Ct. 752, 760 (1982). "Like their constitutional counterparts, these judicially self-imposed limits on the exercise of federal jurisdiction are founded in concern about the proper-and properly limited-role of the courts in a democratic society; but unlike their constitutional counterparts, they can be modified or abrogated by Congress." Bennett, 520 U.S. at 162, 117 S.Ct. at 1161 (quotation marks and citations omitted).

In the instant matter, Plaintiffs lack standing because they cannot satisfy the mandatory Article III requirement of standing, namely, an injury-in-fact that is fairly traceable to the actions of the Defendants and that could be redressed by a favorable decision.

Plaintiffs' cross-motion purports to assert a facial challenge to the Library's policy concerning its distribution of free newspapers and magazines. Specifically, Plaintiffs argue that the policy is unconstitutional because it gives Library officials unbridled discretion to determine whether to accept particular materials for distribution. Such claims, challenging the facial overbreadth of a policy, statute or ordinance, will be sustained where the plaintiff can show that "every application [thereof] creates an impermissible risk of suppression of ideas, such as an ordinance that delegates overly broad discretion to the decisionmaker, and in cases where the ordinance sweeps too broadly, penalizing a substantial amount of speech that is constitutionally protected." Forsyth County v. Nationalist Movement, 505 U.S. 123, 129-30, 112 S.Ct. 2395, 2401 (1992).

Although the Supreme Court has relaxed the "prudential" standing requirements for such facial overbreadth claims,[2] no federal court can relieve a litigant of its burden of demonstrating an "injury in fact." This is a constitutional requirement prescribed by Article III. See Virginia v. American Booksellers Association Inc., 484 U.S. 383, 392, 108 S.Ct. 636, 642 (1988) (plaintiff challenging the constitutionality of a statute on overbreadth grounds must still "establish at an irreducible minimum an injury in fact; that is, there must be some threatened or actual injury resulting from the putatively illegal action") (quotation marks and citations omitted); Farrell v.

---

[2] The Supreme Court has done so because it recognizes that persons whose First Amendment rights have been violated may simply refrain from speech rather than engage in the relative costly endeavor of challenging a statute or policy. See Virginia v. Hicks, 539 U.S. 113, 119-20, 123 S.Ct. 2191, 2196-97 (2003). Accordingly, courts allow a party to assert a facial challenge under the overbreadth doctrine to ensure that unconstitutional burdens on speech are eliminated. See Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 503, 105 S.Ct. 2794, 2802 (1985) (First Amendment overbreadth doctrine authorizes individuals "to challenge a statute on its face because it ... threatens others not before the court-those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution").

Burke, 449 F.3d 470, 499 (2d Cir. 2006) ("We allow a party to bring an overbreadth challenge where that party satisfies the [Article III] requirement of 'injury-in-fact,' and [where] it can be expected satisfactorily to frame the issues in the case") (quotation marks and citation omitted); Bordell v. General Electric Company, 922 F.2d 1057, 1060 (2d Cir. 1991) ("This slender exception to the prudential limits on standing ... does not affect the rigid constitutional requirement that plaintiffs must demonstrate an injury in fact to invoke a federal court's jurisdiction."); Brache v. County of Westchester, 658 F.2d 47, 53 (2d Cir.1981) ("Even when First Amendment rights are asserted, a litigant is denied standing to litigate an overbreadth challenge to a statute that can constitutionally be applied to his conduct unless a ruling is necessary to avert a real and substantial restraint on protected expression"); International Action Center v. City of New York, ___ F.Supp.2d ___, 2007 WL 4179345 (S.D.N.Y. 2007) (applying Farrell and holding that organization, which had suffered no cognizable injury, lacked standing to raise facial challenge concerning parade regulations); M.J. Enterprises Enterprises, Inc. v. City of Mt. Vernon, 234 F.Supp.2d 306, 312 (S.D.N.Y. 2002) (First Amendment "exceptions to prudential standing ... do not eviscerate Article III's requirements") (quotation marks omitted). See also CAMP Legal Defense Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1271 (11th Cir. 2006) ("The overbreadth doctrine, which is judicially created, cannot alter the requirements of standing, under Article III, because the Judiciary cannot abrogate the Constitution"); Advantage Media, L.L.C. v. City of Eden Prairie, 456 F.3d 793, 799 (8th Cir. 2006) ("Under no circumstances ... does the overbreadth doctrine relieve a plaintiff of its burden to show constitutional standing"); Mosby v. Ligon, 418 F.3d 927, 932-33 (8th Cir. 2005) (litigants must satisfy "normal requirements" of Article III standing even when bringing facial challenges).

Thus, to have standing to challenge a policy or regulation as facially unconstitutional, a plaintiff must have "a claim of specific harm or a threat of specific future harm." Bigelow v. Virginia, 421 U.S. 809, 816-817, 95 S.Ct. 2222, 2230 (1975). As the Second Circuit explained in Bordell, a plaintiff must show that he "has sustained or is immediately in danger of sustaining some direct injury" as a result of the challenged policy or regulation. Moreover, the injury, or threat of injury, must be both "real and immediate," not "conjectural" or "hypothetical." Bordell, 922 F.2d at 1060. "Abstract injury is not enough." (Id.).

Plaintiffs cannot meet this requirement. The Library has distributed, and wishes to continue distributing, the Westchester Guardian newspaper (albeit without the use of Plaintiffs' bulky vending machines). (Force Decl., ¶¶ 15-17; Martinez Decl., ¶¶ 5, 7). Plaintiffs do not dispute this fact. Accordingly, Plaintiffs cannot demonstrate that have sustained, or may sustain, any direct injury as a result of the Library's policy for evaluating free newspapers and magazines for distribution.

POINT II

PLAINTIFFS CANNOT MEET THE REQUIREMENTS
FOR ISSUANCE OF A PRELIMINARY INJUNCTION

Even if Plaintiffs could establish Article III standing (and they cannot), they cannot satisfy the requirements for issuance of preliminary injunctive relief. "A party seeking a preliminary injunction in this Circuit must show: (1) irreparable harm in the absence of the injunction and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." Random House, Inc. v. Rosetta Books LLC, 283 F.3d 490, 491 (2d Cir. 2002). Although the discussion below addresses Plaintiffs' failure to satisfy

the "likelihood of success on the merits" prong of this standard, Plaintiffs' inability to articulate any kind of cognizable injury also underscores that they cannot show a risk of irreparable harm or the balance of hardships tipping in their favor.

As set forth in the Library's moving brief, it is well-established that the level of judicial scrutiny applied to governmental restrictions upon speech varies with the nature of the forum in which the speech occurs. See, e.g., Arkansas Educational Television Commission v. Forbes, 523 U.S. 666, 677, 118 S.Ct. 1633, 1641 (1998). Public libraries, such as the Yonkers Public Library, have been consistently deemed "limited public forums" for purposes of constitutional analysis. (See Library Br., p. 8) (citing cases).

Plaintiffs miss this fundamental point in their moving papers. Each and every case cited in Plaintiffs' brief involved a traditional public forum, in which any governmental restrictions upon speech must be content-neutral, narrowly tailored to serve a significant government interest, and allow ample alternative channels of communication. Thus, Plaintiffs' citation of the following cases is misplaced because the forums they involved triggered a standard of review that is wholly inapplicable to the instant matter: Thomas v. Chicago Park District, 534 U.S. 316, 122 S.Ct. 775 (2002) (political activists challenged ordinance requiring individuals to obtain permit before conducting large-scale events in public parks); Forsyth County, Ga. v. Nationalist Movement, 505 U.S. 123, 112 S.Ct 2395 (1992) (organization challenged a permitting ordinance for parades, processions or open air public meetings); City of Lakewood v. Plain Dealer Publishing Company, 486 U.S. 750, 108 S.Ct. 2138 (1988) (newspaper challenged ordinance granting city mayor authority to issue permits to place news racks on city sidewalks); Lusk v. Village of Cold Spring, 475 F.3d 480 (2d Cir. 2007) (ordinance restricting ability of homeowner to post signs on his residential property protesting a real estate development); Field Day, LLC v.

County of Suffolk, 463 F.3d 167 (2d Cir. 2006) (concert promoter challenged failure of county officials to grant a permit for a two-day concert festival in a public park); Deegan v. City of Ithaca, 444 F.3d 135 (2d Cir. 2006) (preacher challenged municipal noise ordinances applied to prevent him from preaching in Ithaca Commons, an outdoor pedestrian mall located in downtown Ithaca); Hobbs v. County of Westchester, 397 F.3d 133 (2d Cir.), cert. denied, 546 U.S. 815, 126 S.Ct. 340 (2005) (street performer challenged validity of county executive order precluding him from performing in public park); Transportation Alternatives, Inc. v. City of New York, 340 F.3d 72 (2d Cir. 2003) (organization challenged ordinance that allegedly imposed excessive fees for event permits in public parks); MacDonald v. Safir, 206 F.3d 183 (2d Cir. 2000) (organization challenged ordinance after they were denied permit to conduct a parade up Fifth Avenue from Washington Square Park to Central Park at 96th Street); National Council of Arab Americans, Act Now to Stop War & End Racism, 478 F.Supp.2d 480 (S.D.N.Y. 2007) (community activist organization challenged regulations governing the issuance of permits for events on Central Park's Great Lawn); Abel v. Town of Orangetown, 759 F.Supp. 161 (S.D.N.Y. 1991) (candidate for town justice challenged zoning code provision prohibiting placement of signs on alongside the public streets on the unpaved portion of the public right of way).

The case mostly directly on point, which the Library cited in support of its motion but Plaintiffs nevertheless chose to ignore in their brief, is United States v. American Library Association, Inc., 539 U.S. 194, 123 S.Ct. 2297 (2003). In American Library Association, a group of public libraries and other interested parties challenged the constitutionality of the Children's Internet Protection Act ("CIPA"), 114 Stat. 2763A-335. Under the CIPA, public libraries were required to use Internet filters to block obscene images, and to prevent minors from obtaining access to such materials, as conditions for receipt of federal subsidies. The Court

held that requiring public libraries to install Internet filters and take such measures did not force them to violate their patrons' First Amendment rights, and that CIPA was a valid exercise of Congress' spending power.

American Library Association makes clear that the rigorous standard of review applicable in cases involving "traditional pubic forums," advanced by Plaintiffs in their brief, cannot be applied in the context of a public library's content-based decisions about which materials to acquire for its collection. Writing for a plurality, Chief Justice Rehnquist explained that this standard is incompatible with the traditional role of public libraries:

> Public libraries pursue the worthy missions of facilitating learning and cultural enrichment . . . . To fulfill their traditional missions, public libraries must have broad discretion to decide what material to provide to their patrons. Although they seek to provide a wide array of information, their goal has never been to provide universal coverage. Instead, public libraries seek to provide materials "that would be of the greatest direct benefit or interest to the community. To this end, libraries collect only those materials deemed to have requisite and appropriate quality. See W. Katz, Collection Development: The Selection of Materials for Libraries 6 (1980) ("The librarian's responsibility ... is to separate out the gold from the garbage, not to preserve everything"); F. Drury, Book Selection xi (1930) ("[I]t is the aim of the selector to give the public, not everything it wants, but the best that it will read or use to advantage"); App. 636 (Rebuttal Expert Report of Donald G. Davis, Jr.) ("A hypothetical collection of everything that has been produced is not only of dubious value, but actually detrimental to users trying to find what they want to find and really need").

American Library Association, 539 U.S. at 204, 123 S.Ct. at 2304 (quotation marks and citations omitted).

In light of these goals, the Court concluded that "forum analysis and heightened judicial scrutiny are incompatible with . . . the discretion that public libraries must have to fulfill their traditional missions. Public library staffs necessarily consider content in making collection

decisions and enjoy broad discretion in making them." American Library Association, 539 U.S. at 205, 123 S.Ct. at 2304.[3]

In framing the appropriate standard of review, the Court principally relied upon two cases, Arkansas Educational Television Commission v. Forbes, 523 U.S. 666, 118 S.Ct. 1633 (1998), and National Endowment for the Arts v. Finley, 524 U.S. 569, 118 S.Ct. 2168 (1998), which stand for the proposition that the government has the power to consider content in selecting the type of speech it will fund or support with public resources. In such instances, the Constitution simply requires that the government's criteria be viewpoint-neutral and reasonable.

This level of scrutiny is similar to that applied in nonpublic and limited public forums, where restrictions on speech "must only be reasonable and viewpoint neutral." Make The Road by Walking, Inc. v. Turner, 378 F.3d 133, 143 (2d Cir. 2004); see also Gay Guardian Newspaper v. Ohoopee Regional Library System, 235 F.Supp.2d 1362, 1371 (S.D.Ga. 2002), aff'd, 90 Fed.Appx. 386 (11th Cir. 2003) ("Librarians may ordinarily take some comfort in the fact that, even when viewed solely as a limited public forum, their content selection/removal decisions need only have a rational basis"). Under this standard, such restrictions "need not be the most reasonable or the only reasonable limitation." Cornelius v. NAACP Legal Def. & Educ. Fund, Inc., 473 U.S. 788, 808, 105 S.Ct. 3439, 3452 (1985).

This level of review is also consistent with those cases holding that meeting rooms and other spaces inside public libraries constitute "limited public forums," and restrictions upon

---

[3] The two justices who concurred in American Library Association, Justice Kennedy and Justice Breyer, did not adopt the plurality opinion's disavowal of the forum analysis generally associated with the First Amendment. Nevertheless, neither Justice suggested that a library's content-based decisions about acquiring materials for its collection should invoke the same rigorous standard applied in traditional public forum cases.

-11-

speech in such areas need only be reasonable and viewpoint neutral.  See Faith Center Church Evangelistic Ministries v. Glover, 480 F.3d 891, 908 (9th Cir. 2006), cert. denied, ___ U.S. ___, 2007 WL 1668585 (2007); Neinast v. Board of Trustees of Columbus Metropolitan Library, 346 F.3d 585, 591 (6th Cir. 2003); Kreimer v. Bureau of Police for Town of Morristown, 958 F.2d 1242, 1261 (3d Cir. 1992); Doyle v. Clark County Public Library, 2007 WL 2407051, at *4 (S.D. Ohio 2007); Hill v. Derrick, 2006 WL 1620226, at *6 (M.D. Pa. 2006).

Applying these principles here, the Library's policy easily passes constitutional muster. The policy does indeed vest the Library Director with discretion to consider editorial content, and relevancy to local residents, in deciding whether to accept a particular newspaper or magazine for distribution.  The policy similarly allows the Library Director to decline to accept any publication for distribution that displays blatantly offensive language or images, or that advocates discrimination on the basis of religion, race, gender, ethnicity or sexual orientation. These are precisely the type of reasonable, viewpoint-neutral criteria that are permitted under American Library Association and the other authorities cited above, and in making such decisions the Library Director is entitled to exercise his or her "broad discretion."  American Library Association, 539 U.S. at 205, 123 S.Ct. at 2304.  As stated above, Plaintiffs' bombastic arguments are based upon the wrong case law and wrong standard of review.  Accordingly, Plaintiffs' cross-motion should be denied.

## III. Conclusion

For these reasons, Defendants and the Library respectfully submit that Plaintiffs' motion for a preliminary injunction should be denied in all respects.

Dated:   White Plains, New York
         December 21, 2007

                          KEANE & BEANE, P.C.

By: *[signature]*
Edward J. Phillips (EP-4825)
Attorneys for Defendants and Intervenor-Defendant
445 Hamilton Avenue, Suite 1500
White Plains, New York 10601
(914) 946-4777